UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CIVEO OFFSHORE, LLC | * | CIVIL ACTION NO. 14-cv-01777-SM-DEK |
| | * | |
| versus | | |
| | * | JUDGE SUSIE MORGAN |
| M/V REM POSEIDON (IMO Number 9422330); and her engines, tackle, furniture, apparel, appurtenances, etc., *in rem* | * | |
| | * | MAG. JUDGE DANIEL E. KNOWLES |
| *  *  *  *  *  *  * | | |

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARREST

MAY IT PLEASE THE COURT:

Plaintiff, Civeo Offshore, LLC ("Civeo"), has arrested the M/V REM POSEIDON seeking to enforce an alleged maritime lien against the vessel under Supplemental Rule C(1). See Motion for Issuance of Order Authorizing Warrant for Arrest of the M/V REM POSEIDON, R. Doc. 3, p. 1 of 2. Blue Marine Shipping II, S.A. de C.V. ("Blue Marine"), subject to its Rule E(8) restricted appearance as time charterer of the M/V REM POSEIDON, asks the Court to vacate that arrest on the grounds (1) that underlying claim is governed by Mexican law and (2) Mexican law does not provide for a maritime lien under the facts alleged. Accordingly, the arrest should be vacated.

I.   Mexican Law Governs the Underlying Relationship Between Oil States Energy Services, S.A. de C.V. ("OSES" or "Lessor") and Blue Marine.

Plaintiff alleges that it leased several items of property to a Mexican entity OSES prior to September 2011. R. Doc. 1, p. 2 of 8 at Para. 4. This allegation is not supported by any

documentation reflecting the lease, terms and conditions between Civeo and OSES.  Civeo alleges that Civeo's property was then leased by OSES to Blue Marine, *id.* at Para. 5, and that Blue Marine stopped making lease payments to OSES in late 2012, *id.*, p. 3 of 8 at Para. 9. Civeo attaches no affidavit from OSES to support the specifics of its claim, but relies upon an exhibit identified as Terms and Conditions of Lease Agreement REM Poseidon ("Lease Agreement"). Civeo alleges it is the proper party in interest because OSES and Civeo entered into a so-called Asset Purchase and Sale Agreement ("Asset Agreement") on May 30, 2014, *id.*, p. 4 of 8 at Para. 15, and that a maritime lien exists due to Blue Marine's failure to make lease payments, *id.* at p. 3 of 8, Para. 9, and converting the property, *id.* at p. 4 of 8, Para. 14.

Both the Lease Agreement and the Asset Agreement are governed by Mexican law. The Lease Agreement (attached as Exhibit 1 to the Complaint, R. Doc. 1-2) provides at p. 4 of 6 that, "This lease shall be construed and governed in accordance with the laws of the state of Tabasco, Mexico."

The Asset Agreement between OSES and Civeo, Exhibit 4 to the Complaint, R. Doc. 1-5, p. 6 of 9 provides:

> For the interpretation, execution and performance of this Agreement, the Parties expressly submit to the courts and legislation of the State of Tabasco, and hereby expressly waive any other jurisdiction that may be applicable due to their present or future domicile, or due to any other cause.  Likewise, the Parties agree that for the interpretation, execution and performance of this Agreement, the Parties submit to the applicable provisions of the Code of Commerce and its supplementary Laws.

Thus, the two contracts which allegedly forms the basis for plaintiff's rights both call for the application of Mexican law.

II.     Whether a Maritime Lien Exists Is Determined by Mexican Law.

The import of the parties' selection of Mexican law is explained in *Sembawang Shipyard Ltd. v. Charger, Inc. and M/V CHARGER*, 955 F.2d 983 (5th Cir.), *reh. denied*, 963 F.2d 372 (5th Cir. 1992). The parties in the Sembawang litigation bound themselves to be governed by foreign, in that case, Singaporean law.

Noting that "Access to a proceeding *in rem* under Rule C is rigorously restricted," the Court stated that a plaintiff <u>must</u> hold a maritime lien, citing THE RESOLUTE, 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897); Supplemental Rule C(1)(a).  955 F.2d at 987 (underscoring added).[1] Applying the parties' contractual choice of Singaporean law, the Court held "that Singapore law determines Sembawang's rights against the Vessel *in rem* as well as Sembawang's rights against Charger *in personam*." 955 F.2d at 986.  The Court further noted that its "holding on choice of law applies to the *creation* of a maritime lien or other right." *Id.* The Fifth Circuit also held that the shipyard could not rely on the Federal Maritime Lien Act because the issue of whether the shipyard held a maritime lien was governed by Singaporean law. *Id.* at 988.  After finding that Singapore allowed only a statutory right of action *in rem* and not a maritime lien, the Court held that the shipyard improperly proceeded against the vessel *in rem* under Supplemental Rule C.  *Id.*

---

[1] The Court further noted that a plaintiff may proceed under Supplemental Rule C "[whenever] a statute of the United States provides for a maritime action *in rem* or a proceeding analogous thereto.  Supplemental Rule C(1)(b)."  Insofar as plaintiff has not alleged such a claim, see Motion for Issuance of Order Authorizing Warrant of Arrest, R. Doc. 3 at p. 1 of 2, Complaint, R. Doc. 1 generally, this issue is not before the Court.

III.      Mexican Law Does Not Allow a Maritime Lien in this Case.

While not a party to the Lease Agreement, Civeo asserts claims under that agreement and alleges a maritime lien exists by virtue of the non-payment of rent under the Lease Agreement. However, Civeo's pleadings do not mention Mexican lien law. Attached hereto as Exhibit A is the declaration of Enrique Garza Ruiz Esparza, an expert in Mexican maritime law. As his declaration indicates, Article 91 of the Mexican Navigation and Maritime Commerce Law outlines the cases in which maritime liens exist in Mexico. *Id.* Mexican law does not provide a maritime lien for breach of contract or for non-payment of rent on equipment or for the tort of conversion. *Id.* His statement in that regard is consistent with statements in U.S. case law.

For example, in *Odin Shipping, Ltd. v. Drive Ocean V MV*, 221 F.3d 1348, *2 (9th Cir. 2000) (unpublished opinion), the Court noted that, under Mexican law "maritime liens are available only for torts and 'due to the physical loss or physical damage caused by the operation of the vessel,' not for the claims of the nature alleged by Odin [misrepresentation and conversion]."

There is no indication that Civeo even considered Mexican law or whether Mexican law provided a maritime lien when it filed its complaint.

WHEREFORE, subject to its restricted appearance, mover, Blue Marine Shipping II, S.A. de C.V., prays that the Court vacate the arrest of the M/V REM POSEIDON on the grounds that Civeo Offshore, LLC does not hold a maritime lien under applicable Mexican law. Blue Marine reserves the right to assert further pleadings relating to the arrest at a later date.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CIVEO OFFSHORE, LLC | * | CIVIL ACTION NO. 14-cv-01777-SM-DEK |
| | * | |
| versus | | |
| | * | JUDGE SUSIE MORGAN |
| M/V REM POSEIDON (IMO Number 9422330); and her engines, tackle, furniture, apparel, appurtenances, etc., *in rem* | * | |
| | * | MAG. JUDGE DANIEL E. KNOWLES |
| *     *     *     *     *     *     * | | |

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARREST

MAY IT PLEASE THE COURT:

Plaintiff, Civeo Offshore, LLC ("Civeo"), has arrested the M/V REM POSEIDON seeking to enforce an alleged maritime lien against the vessel under Supplemental Rule C(1). See Motion for Issuance of Order Authorizing Warrant for Arrest of the M/V REM POSEIDON, R. Doc. 3, p. 1 of 2. Blue Marine Shipping II, S.A. de C.V. ("Blue Marine"), subject to its Rule E(8) restricted appearance as time charterer of the M/V REM POSEIDON, asks the Court to vacate that arrest on the grounds (1) that the parties bound themselves to be governed by Mexican law and (2) Mexican law does not provide for a maritime lien under the facts alleged. Accordingly, the arrest should be vacated.

I.  Mexican Law Governs the Underlying Relationship Between Oil States Energy Services, S.A. de C.V. ("OSES" or "Lessor") and Blue Marine.

Plaintiff alleges that it leased several items of property to a Mexican entity OSES prior to September 2011. R. Doc. 1, p. 2 of 8 at Para. 4. It further alleges that OSES then leased the

property to Blue Marine, *id.* at Para. 5, that Blue Marine stopped making lease payments to OSES in late 2012, *id.*, p. 3 of 8 at Para. 9, that Civeo is a proper party in interest because OSES and Civeo entered into a so-called Asset Purchase and Sale Agreement on May 30, 2014, *id.*, p. 4 of 8 at Para. 15, and that a maritime lien exists due to Blue Marine's failure to make lease payments, *id.* at p. 3 of 8, Para. 9, and converting the property, *id.* at p. 4 of 8, Para. 14.

The lease which plaintiff relies upon is attached as Exhibit 1 to the Petition, R. Doc. 1-2. It provides at p. 4 of 6 that, "This lease shall be construed and governed in accordance with the laws of the state of Tabasco, Mexico".

Moreover, the so-called Asset Purchase and Sale Agreement between OSES and Civeo, Exhibit 4 to the Complaint, R. Doc. 1-5, p. 6 of 9 provides:

> For the interpretation, execution and performance of this Agreement, the Parties expressly submit to the courts and legislation of the State of Tabasco, and hereby expressly waive any other jurisdiction that may be applicable due to their present or future domicile, or due to any other cause.  Likewise, the Parties agree that for the interpretation, execution and performance of this Agreement, the Parties submit to the applicable provisions of the Code of Commerce and its supplementary Laws.

Thus, the two contracts which allegedly forms the basis for plaintiff's rights both call for the application of Mexican law.

II.    Whether a Maritime Lien Exists Is Determined by Mexican Law.

The import of the parties' selection of Mexican law is explained in *Sembawang Shipyard Ltd. v. Charger, Inc. and M/V CHARGER*, 955 F.2d 983 (5th Cir.), *reh. denied*, 963 F.2d 372 (5th

Cir. 1992). As in the instant case, the parties in the Sembawang litigation bound themselves to be governed by foreign, in that case, Singaporean law.

After noting that "Access to a proceeding *in rem* under Rule C is rigorously restricted," the Court stated that a plaintiff <u>must</u> hold a maritime lien, citing THE RESOLUTE, 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897); Supplemental Rule C(1)(a). 955 F.2d at 987 (underscoring added).[1]

Acknowledging the parties' contractual choice of Singaporean law, the Court stated "we therefore hold that Singapore law determines Sembawang's rights against the Vessel *in rem* as well as Sembawang's rights against Charger *in personam*." 955 F.2d at 986. The Court further noted that its "holding on choice of law applies to the *creation* of a maritime lien or other right." *Id.* The Fifth Circuit also held that the shipyard could not rely on the Federal Maritime Lien Act because the issue of whether the shipyard held a maritime lien was governed by Singaporean law. *Id.* at 988. After finding that Singapore allowed only a statutory right of action *in rem* and not a maritime lien, the Court held that the shipyard improperly proceeded against the vessel *in rem* under Supplemental Rule C. *Id.*

III.   Mexican Law Does Not Allow a Maritime Lien in this Case.

Civeo alleges a maritime lien exists by virtue of the non-payment of rent and conversion of its equipment. However, Civeo's pleadings do not mention Mexican lien law. Attached hereto as Exhibit A is the declaration of Enrique Garza Ruiz Esparza, an expert in Mexican

---

[1] The Court further noted that a plaintiff may proceed under Supplemental Rule C "[whenever] a statute of the United States provides for a maritime action *in rem* or a proceeding analogous thereto. Supplemental Rule C(1)(b)." Insofar as plaintiff has not alleged such a claim, see Motion for Issuance of Order Authorizing Warrant of Arrest, R. Doc. 3 at p. 1 of 2, Complaint, R. Doc. 1 generally, this issue is not before the Court.

maritime law.  As his declaration indicates Article 91 of the Mexican Navigation and Maritime Commerce Law outlines cases in which maritime liens exist in Mexico.  *Id.*  Mexican law does not provide a maritime lien for breach of contract or for non-payment of rent on equipment or for the tort of conversion.  *Id.*  His statement in that regard is consistent with statements in U.S. case law.

For example, in *Odin Shipping, Ltd. v. Drive Ocean V MV*, 221 F.3d 1348 (9th Cir. 2000) (unpublished opinion), the Court noted that, under Mexican law "maritime liens are available only for torts and 'due to the physical loss or physical damage caused by the operation of the vessel,' not for the claims of the nature alleged by Odin [misrepresentation and conversion]."

There is no indication that Civeo even considered Mexican law or whether Mexican law provided a maritime lien when it filed its complaint.

WHEREFORE, subject to its restricted appearance, mover, Blue Marine Shipping II, S.A. de C.V., prays that the Court vacate the arrest of the M/V REM POSEIDON on the grounds that Civeo Offshore, LLC does not hold a maritime lien under applicable Mexican law.  Blue Marine reserves the right to assert further pleadings relating to the arrest at a later date.

    Respectfully submitted,

    /s/ Michael H. Bagot, Jr.,

    _____
    MICHAEL H. BAGOT, JR., T.A. (#2665)
    THOMAS J. WAGNER (#13143)
    G. BEAUREGARD GELPI (#18226)
    WAGNER, BAGOT & RAYER, LLP
    Pan American Life Center - Suite 1660
    601 Poydras Street
    New Orleans, Louisiana 70130
    Telephone: 504-525-2141
    Facsimile: 504-523-1587
    E-mail:  mbagot@wb-lalaw.com
    E-mail:  twagner@wb-lalaw.com

E-mail:  bgelpi@wb-lalaw.com
Attorneys for Blue Marine Shipping II, S.A. de C.V.

## CERTIFICATE OF SERVICE

I do hereby certify that on this  7th day of August 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Michael H. Bagot, Jr.

_____
MICHAEL H. BAGOT, JR.

789-01\PLDG\0007-TJW